**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHEN OWENS,** *Plaintiff* | : | **CIVIL ACTION** |
| **v.** | : | **NO. 26-CV-5141** |
| **CITY OF PHILADELPHIA, *et al.*,** *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J. SEPTEMBER 24, 2026

Plaintiff Steven Owens brings this civil action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), on behalf of himself and a class of similarly situated inmates, based on allegations that the Philadelphia Department of Prisons ("PDP") has downsized its mental health unit, affecting class members' ability to access quality mental health care while incarcerated. He also seeks leave to proceed *in forma pauperis*. For the reasons set forth, Owens is granted leave to proceed *in forma pauperis* and his Complaint is dismissed without prejudice to amendment.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

Owens, who was incarcerated at the Curran-Fromhold Correctional Facility ("CFCF") at the time he filed his Complaint, purports to bring claims on behalf of himself and a class of "prisoners of the City of Philadelphia who [have] sever[e] mental health disorders and will be or and are currently in the custody of the Philadelphia Department of Prisons." (Compl. ¶ 3.) Owens alleges that he and "all others similarly situated" have "current multiple medical disorders" for

---

[1] The following allegations are taken from the Complaint ("Compl.") (ECF No. 1) and publicly available dockets of which the Court takes judicial notice. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket." (collecting cases)). The Court adopts the pagination supplied to the Complaint by the CM/ECF docketing system.

which they receive "medication treatment." (*Id.* ¶ 8.) Owens names as Defendants the City of Philadelphia, the PDP,[2] and Commissioner of Prisons Michael R. Resnick in his individual and official capacities. (*Id.* at 2, 3-4.)

In the complaint, Owens alleges that he and other class members have been housed on general population units at facilities within the PDP along with other inmates who do not have mental illness and "often make fun of, extort, assault, and mistreat[]" them. (*Id.* ¶ 8.) According to Owens, the PDP has only one mental health unit, known as the "T/U," that is currently located at the Riverside Correctional Facility ("RCF") on unit D, which can accommodate "only 32 mentally ill" inmates. (*Id.* ¶¶ 8-9.) He alleges that mentally ill inmates used to be housed on "F Unit" at RCF, which held 140 inmates, but that Resnick ordered the change due to a "lack of prison guards at that time to watch over the unit." (*Id.* ¶¶ 10-11.) Owens alleges that there are several class members incarcerated throughout the PDP who are "waiting to be sent to RCF mental health unit." (*Id.* ¶¶ 12-15.) At the time he filed Complaint, he was among 50 class members at CFCF waiting for such placement. (*Id.* ¶ 12.)

Owens alleges that he and other class members are "miss[ing] out of the proper course of mental health treatment that's being provide[d] on the mental health unit at RCF like one on one and group counseling, games and activities provided by various mental health staff on the unit." (*Id.* ¶ 16.) He further alleges that he and other class members are "often misunderstood" by others, causing them to be "assaulted, pepper sprayed and tossed in" the Restricted Housing Unit (RHU")

[2] PDP "is not legal entity but instead is a department of the City of Philadelphia," meaning it is not separately suable from the City itself. *Burgos v. Phila. Prison System*, 760 F. Supp. 2d 502, 503 n.1 (E.D. Pa. 2011); *see also Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"). Accordingly, the Court will dismiss PDP as a Defendant in this case and construe any claims against the PDP as having been raised against the City of Philadelphia.

for long periods of time. (*Id.* ¶ 17.) Additionally, other inmates allegedly offer mentally ill inmates drugs "to calm them down from a mental episode," which exacerbates the situation. (*Id.* ¶ 18.) He alleges that mentally ill inmates who are not housed on the mental health unit "have to speak to mental health staff through a 300 lb ste[e]l door" so as a result, they "do not receive the proper course of mental health treatment." (*Id.* ¶ 19.) Further, class members are often sent to the "PHSW ('mental health ward') located in the basement of the Detention Center because either they are hard to handle mentally . . . or because they are forced to be . . . committed by some [psychiatric] doctor who just doesn't want to deal with them." (*Id.* ¶¶ 20-22.) According to Owens, the conditions in the PHSW are worse than the conditions in the RHU. (*Id.* ¶¶ 21-22.)

On June 11, 2026, a member of the "mental health staff" named Mark came to Owens's cell to explain that he was "trying to get [Owens] over to the mental health unit at RCF" as ordered by the "mental health doctor at CFCF." (*Id.* ¶¶ 23, 24.) Owens alleges that "due to the mental health unit not being big enough, [he] will not be afforded the opportunity to be sent to the TU by the time [he] finish[es] court." (*Id.* ¶ 24.) He adds that Mark told him there is "a back log of up to 2 yrs . . . to be sent to the mental health unit because of the down grade in mental health units." (*Id.* ¶ 25.) Accordingly, Owens filed his Complaint, which is dated June 13, 2026, alleging that the Defendants have acted with deliberate indifference to the health, safety, and "serious medical and mental health needs" of class members. (*Id.* at 7-10.) At that time, it appears Owens had been incarcerated at CFCF for approximately six weeks. *See Owens v. Our Brothers Place*, No. 26-2486 (E.D. Pa.) (ECF No. 8) (notice of change address dated May 7, 2026 reflecting Owens's new incarceration at CFCF). The Complaint seeks an injunction "ordering defendant[s] to open and operate a large enough unit(s) that will accommodate the mental health needs" of current and future

class members, a declaration that class members' rights have been violated, and assorted damages. (Compl. at 9-10.)

The Court received the Complaint on July 22, 2026, as it was not mailed until late July. (*See id.* at 12.) Since Owens neither paid the fee nor sought leave to proceed *in forma pauperis*, the Court issued an order directing him to do so. (ECF No. 3.) Owens subsequently filed a notice of change of address dated August 13, 2026, reflecting that that he had been transferred to RCF. (ECF No. 4.) Thereafter, he filed a Motion for Leave to Proceed *In Forma Pauperis* with a copy of his prisoner trust fund account statement. (ECF Nos. 5, 6.) He was thereafter transferred back to CFCF, and then to the Philadelphia Industrial Correctional Center. (ECF Nos. 9 & 10.) According to the City of Philadelphia's Incarcerated Person Locator, Owens is now back at CFCF. *See* https://incarceratedperson-locator.phila.gov/#/ (last accessed Sept. 23, 2026).[3]

## II. STANDARD OF REVIEW

Owens is granted leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Owens's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized*

---

[3] The Court will direct the Clerk of Court to update Owens's address to CFCF.

[4] Because Owens is a prisoner, he still must pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

*by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Owens is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

### *A. Class Claims*

*Pro se* litigants such as Owens, who are not attorneys, may not pursue claims on behalf of others, including by way of a class action. *See Hagan v. Rogers*, 570 F.3d 146, 158-59 (3d Cir. 2009) (noting that "*pro se* litigants are generally not appropriate as class representatives."); *see also, e.g., Olson v. Warden Schuylkill FCI*, No. 21-2436, 2022 WL 260060, at *1 (3d Cir. Jan. 27, 2022) (*per curiam*) ("This Court and others have recognized that '*pro se* litigants are generally not appropriate as class representatives.'" (quoting *Hagan,* 570 F.3d at 158-59 and citing other cases)); *Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent herself or himself *pro se*, a non-attorney may not represent other parties in federal court."); *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006) (*per curiam*) ("Lewis, who is proceeding *pro se,* may not represent a putative class of prisoners."). Accordingly, Owens will not be permitted to proceed by way of class action, and the Court will not consider allegations or requests for relief pertaining to anyone other than Owens. All claims intended to be asserted on behalf of others will be dismissed without prejudice and, however, not subject to further amendment. The Court addresses Owens's own claims below.

### *B. Constitutional Claims*

Owens brings constitutional claims pursuant to § 1983 that are best characterized as claims for deliberate indifference to his serious mental health needs. "To state a claim under § 1983, a

plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To proceed against a municipal entity such as the City of Philadelphia under § 1983, or against a City official in his official capacity, a plaintiff must allege that the City's policy or custom caused the violation of his constitutional rights, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), by specifically indicating "what exactly that custom or policy was," *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Suits against high-level government officials must satisfy the general requirements for supervisory liability," *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017), which encompass liability for officials who "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm," *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (citation modified), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). Here, Owens challenges a policy allegedly implemented by Commissioner Resnick on behalf of the City to downsize the mental health unit in the PDP for lack of staffing.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[5] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately

[5] The United States Court of Appeals for the Third Circuit generally employs a "deliberate indifference" framework for medical needs claims regardless of whether the plaintiff is a pretrial detainee or a convicted

indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas*, 88 F.4th at 281 (citation modified). "[S]erious mental healthcare issues" are included among those needs. *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017).

Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted), *petition for cert. filed*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073). This standard is

---

and sentenced prisoner. *See, e.g., Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023) ("Because the Fourteenth Amendment affords pretrial detainees protections at least as great as those available to inmates under the Eighth Amendment, we will review Sherelle Thomas's claims for failure to render medical care under the Fourteenth Amendment by applying the same standard used to evaluate claims brought under the Eighth Amendment."); *Dates v. Winters*, No. 22-2253, 2022 WL 17958626, at *2 n.3 (3d Cir. Dec. 27, 2022) (*per curiam*) ("We have found no reason in previous cases, however, to analyze pretrial detainees' claims of inadequate medical care under something other than the deliberate indifference standard."); *Parker v. Butler County*, 832 F. App'x 777, 780 n.1 (3d Cir. 2020) (*per curiam*) (noting in the context of a medical needs claim, that "[i]t appears that Parker was a pre-trial detainee during the relevant time periods in his complaint. While that affects the source of his constitutional right, it does not dramatically affect the substance of our analysis here."); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020) (employing deliberate indifference standard when assessing medical needs claims brought by immigration detainees); *Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). *But see Moy v. DeParlos*, No. 22-1723, 2023 WL 3717517, at *1 (3d Cir. May 30, 2023) (*per curiam*) (questioning, without deciding, whether an "objective-only inquiry" applies to detainee's claims). Owens's claim fails regardless of any nuance there may be in the standard.

met when a delay or denial of medically necessary care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *See DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026). In contrast, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *see also Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).

Initially, Owens has not described his mental health needs with any specificity. At most, he has alleged that he suffers from "multiple mental disorders" for which he is "receiving medication treatment." (Compl. ¶ 8.) Absent more developed facts explaining the nature of his disorders, the Court cannot conclude that Owens suffers from serious mental health needs, even if he does so in fact. Additionally, the absence of allegations pertaining to the specific care Owens claims is necessary to treat his conditions and without which he would experience serious health risks, is fatal to his deliberate indifference claim. Notably, the Complaint suggests that Owens is receiving medication for his mental health conditions (*id.*), and as well as mental health therapy, *albeit* through a "300lb ste[e]l door," (*id.* ¶ 19), during his incarceration at CFCF. The Complaint also supports an inference that Owens saw a "mental health doctor at CFCF" who ordered his transfer to the mental health unit on RCF. (*Id.* ¶ 24.) His notice of change of address shows that he was transferred to and housed at RCF for a period of time, presumably based on that doctor's order. (ECF No. 4.) As best as the Court can discern, this occurred within three months of Owens's initial incarceration at CFCF. It is not clear from the record — since these facts post-date the filing of the Complaint — whether Owens was reevaluated at RCF, what care Owens received at RCF, or why he was transferred back to CFCF.

Regardless, these facts are not suggestive of deliberate indifference. At most, Owens has alleged that the quality of mental health care on the mental health unit at RCF exceeds the quality of care at CFCF and the other facilities within PDP. That Owens is being housed within PDP at a facility with a lesser quality of care than the more specialized unit at RCF does not, without more, reflect deliberate indifference; rather, to proceed, Owens must allege facts showing that care for his mental health conditions at CFCF is, or was, constitutionally inadequate. *See DiFraia*, 171 F.4th at 630 ("An official risks violating the Eighth Amendment if he invokes nonmedical reasons to delay or deny care that is medically necessary. It is not enough that a treatment might make a prisoner's life easier."); *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[T]he mere receipt of inadequate medical care does not itself amount to deliberate indifference—the defendant must also act with the requisite state of mind when providing that inadequate care."); *Pierce v. Pitkins*, 520 F. App'x 64, 67 (3d Cir. 2013) (*per curiam*) ("Pierce did not allege that he was denied or delayed treatment for his gastrointestinal problems; rather, he alleged that he was denied his preferred method of treatment, which, in light of the treatment he was receiving, does not establish deliberate indifference."). He must also show that he requires placement at RCF as a medical necessity and that prison officials did not make any efforts to mitigate harm while he awaited transfer to RCF. *See DiFraia*, 171 F.4th at 630. As noted, Owens was, in fact, transferred to RCF for a period of time consistent with a doctor's recommendation; it is unclear what treatment he was given there and/or what care he currently has access to after being transferred away from that unit.

Additionally, although the Complaint generally describes harm caused by other inmates and conditions in the PHSW, Owens does not allege that he was personally subjected to these harms or conditions in a manner that would violate his constitutional rights or that these conditions

were the product of a municipal policy or custom. In sum, the Complaint falls short of alleging deliberate indifference to Owens's serious medical needs or any other constitutional claim. *See generally Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

*C. ADA Claims*

Owens also brings an ADA claim based on the City's decision to downsize the mental health unit. The ADA "require[s] public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities."[6] *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase "services, programs, or activities" in Title II of the ADA includes recreational, medical, educational, and vocational prison programs). To state a plausible ADA claim, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess*, 933 F.3d at 288-89 (citation omitted). To allege a disability under the ADA, a plaintiff must allege that he has "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), which can include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," *id.* at § 12101(2)(A). The element of discrimination by reason of disability can be met if a defendant failed to provide the plaintiff with

---

[6] The ADA does not provide for individual liability and the claims against Resnick in his official capacity are duplicative of those claims against the City, so the Court construes Owens's ADA claims as being raised only against the City. *Montanez*, 154 F.4th at 144-45 & n.6.; *see also Graham*, 473 U.S. at 165-66 ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell,* 436 U.S. at 690)).

reasonable accommodations for a disability. *Montanez*, 154 F.4th at 148. "The duty to accommodate is triggered when a disabled person's need for an accommodation becomes known, either because (1) he requests an accommodation or (2) his disability and concomitant need for an accommodation are open and apparent." *Id.* (citations omitted). If a plaintiff seeks compensatory damages, he "must also show intentional discrimination under a deliberate indifference standard." *Furgess*, 933 F.3d at 289.

Owens's ADA claims fail similarly to his § 1983 claims. Although "mental illness qualifies as a disability under the ADA," *Williams v. Sec'y Pa. Dep't of Corr.*, 117 F.4th 503, 528 (3d Cir. 2024), Owens's general allegations that he suffers from unspecified mental health disorders does not adequately plead a disability because Owens has not clearly alleged what conditions he suffers from nor explained how his conditions limit him, *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint."). He has also failed to allege that he was discriminated against because of a disability in a manner reflective of deliberate indifference attributable to the City. He has not explained what accommodations he allegedly required because of his conditions nor how his treatment otherwise amounted to disability discrimination. *See Montanez*, 154 F.4th at 147 (explaining the distinction between failing to provide adequate medical care for an inmate's conditions versus failing to accommodate that inmate's disability); *see also DiFraia*, 171 F.4th at 633 (rejecting ADA claim where "DiFraia's reasonable-accommodations argument just repackages his complaint that he was not given the treatment he desired"). Accordingly, Owens has also failed to state an ADA claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Owens leave to proceed *in forma pauperis* and dismiss his Complaint. Owens will be given leave to file an amended complaint, but only to claims on his own behalf and if he is able to cure the defects identified in his claims. An Order follows, which provides further instruction as to amendment.

*NITZA I. QUIÑONES ALEJANDRO, J.*